**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF OHIO**
**EASTERN DIVISION**

MAREINERS, LLC,
407 EAST 4TH STREET
JOSEPH, OREGON 97846

       Plaintiff,

v.

ANOMATIC CORPORATION,
AT 8880 INNOVATION CAMPUS WAY
NEW ALBANY, OHIO 43054

SERVE ALSO STATUTORY AGENT
ACME AGENT
41 SOUTH HIGH STREET, SUITE 2800
COLUMBUS, OHIO 43215

       Defendant,

Case No.:　1:22-cv-00526

JUDGE

COMPLAINT

JURY TRIAL DEMANDED

       Plaintiff Mareiners, LLC ("Plaintiff" or "Mareiners") hereby brings this Complaint against Anomatic Corporation ("Defendant" or "Anomatic") and alleges as follows:

**NATURE OF THE ACTION**

       1.    This action arises out of Anomatic's willful misappropriation of confidential information disclosed by Mareiners under a non-disclosure agreement ("NDA"), Anomatic's incorporation of that information into one or more public patent applications, and Anomatic's interference with business relationships between Mareiners and third parties by making public Mareiners' licensed technology.

## THE PARTIES

2.      Mareiners is an Oregon corporation having a principal place of business at 407 East 4th Street, Joseph, Oregon 97846.

3.      Anomatic is an Ohio corporation having a principal place of business at 8880 Innovation Campus Way, New Albany, Ohio 43054.

## JURISDICTION AND VENUE

4.      This Court has subject matter jurisdiction over the Defend Trade Secrets Act ("DTSA") claim pursuant to 18 U.S.C. § 1836 and 28 U.S.C. § 1331.  This Court has subject matter jurisdiction over the state law tort and contract claims pursuant to 28 U.S.C. § 1367 since the state law misappropriation, breach of contract, intentional interference with economic relations, unjust enrichment, and conversion claims arise out of the same facts and circumstances that give rise to the DTSA claim under federal law.  The Court has subject matter jurisdiction over the correction of inventorship claim under 28 U.S.C. § 1331 because the claim arises under the patent laws of the United States (35 U.S.C. § 256).

5.      This Court has general personal jurisdiction over Anomatic because Anomatic resides in this District and transacts business in this district.  The Court also has specific personal jurisdiction over Anomatic because Anomatic executed an NDA with a forum selection clause consenting to jurisdiction in this Court.

6.      Venue is proper in this District under 28 U.S.C. § 1391(b)(1) because Anomatic resides in this district.

## BACKGROUND

7.      Mareiners is a technology company led by Reiner J. Goertzen.  Mr. Goertzen has committed a substantial portion of his professional time, resources and efforts over the past two

decades to the development of transformative technology allowing for the crisp application of multi-colored images on metal surfaces. In January of 2004, Mr. Goertzen filed a patent application to cover a method for applying images to surfaces, an application that matured into U.S. Patent No. 7,022,202 ("the '202 Patent") and remains valid and enforceable today. In addition to the patented technology, Mareiners developed proprietary innovative processes that further ensure the brilliant and permanent sublimation of multi-color images on metal surfaces, including aluminum cards used by commercial credit facilities, as an example.

8.      Anomatic is in the business of making and selling decorated metal products for various purposes. In 2017, Anomatic and Mareiners entered into a Mutual Nondisclosure Agreement ("NDA") (attached hereto as Exhibit A) for the purpose of pursuing a potential business relationship. Following the execution of the NDA, Mr. Goertzen worked closely with Mr. Mark Ormiston of Anomatic as well as Anomatic owner Scott Rusch and his son, Steven Rusch, to educate Anomatic on Mareiners' proprietary sublimation technology for the purposes of introducing it to aluminum credit cards, gift cards and other high-end financial card products. By August 8, 2018, Anomatic and Mareiners entered into the Patent License Agreement which called for the payment of $250,000 along with 10% of net sales of Licensed Products during the life of the '202 patent, and 7% of net sales for Licensed Products after the expiration of the '202 patent for use of the trade secrets. To date, Anomatic has yet to pay Mareiners any royalties.

9.      In the context of inquiring about the status of Anomatic's use of Mareiners' patent, Mareiners learned for the first time on March 8, 2022 that Anomatic had received a patent on technology that was related to the information Mareiners disclosed pursuant to the NDA, and that a second provisional application was pending.

10.     Mareiners immediately began investigating Anomatic's patent activity.  Mareiners was unable to locate and inspect the provisional application because patent applications are not published by the patent office for 18 months unless they happen to issue in the interim.  Further, provisional patent applications are not in condition for examination and will never be published unless they are converted to non-provisional applications within a year of filing.  Mareiners requested a copy of the provisional application on May 3, 2022.  To date, Anomatic has refused to provide a copy.

11.     Mareiners did, however, locate U.S. Patent No. 11,182,655 ("the '655 Patent") (attached as Exhibit B), which was filed on December 13, 2018 and issued to Anomatic on November 23, 2021.  The sole named inventor on the '655 Patent is Mr. Ormiston.

12.     Upon inspection of the '655 patent, Mareiners immediately spotted its trade secrets claimed by Mr. Ormiston in the patent specification.  Specifically, the patent provides descriptions of the specific process for establishing the sublimation of inks on paper, the required use of nickel acetate sealant, and the required dwell time, all of which are proprietary Mareiners technologies disclosed to Anomatic under the NDA.  In particular, column 5, line 45 through column 10, line 2 detail the precise information and knowledge that Mareiners used to educate Anomatic's team on the available credit card manufacturing options, materials, shapes and production processes.  Anomatic was not familiar with these processes until Mareiners educated Anomatic under the NDA.

13.     The '655 Patent, therefore, improperly names Mr. Ormiston as an inventor for technology that Mareiners, and in particular Mr. Goertzen, developed.  Claims 1-12, 14 and 17-20 specifically claim invention of a "transaction card" or "method of manufacturing a transaction card" that was specifically developed by Mareiners or was otherwise part of available ISO

standards for transaction cards.  Anomatic cannot assert that it has invented the claimed transaction card nor the processes detailed by these claims.  Nor can Anomatic claim to have developed the enabling specification references located in Columns 5-10 of the '655 Patent.  At a minimum, the transaction cards and manufacturing process claims in Claims 1-12, 14 and 17-20 were invented by Mr. Goertzen, disclosed to Anomatic and improperly converted into patent claims by Mr. Ormiston and Anomatic.

14.    The '655 Patent also explicitly discloses and claims Mareiners' trade secrets.  For example, Claims 13, 15 and 16 claim the by-product of Mareiners' trade secrets.  Namely, Anomatic claims to have invented "anodizing the metallic card bodies, wherein the front and rear beveled peripheral surfaces are colored during anodizing in the same dyestuff as the other areas of the card body through dye absorption to cover a metallic color of the card body."  *See* Claim 16 of the '655 patent.  As is required to obtain a patent, Anomatic provided an enabling disclosure in Columns 10-12, disclosing to the world, in a stepwise fashion, how to accomplish Mareiners' proprietary process and effect:

| Category of Trade Secret | Specification Reference Containing the Trade Secret |
|---|---|
| Material pre-treatment options for to establishing different finishes (flat, shiny, matte, etc.). | Column 10 line 20 through Column 10, line 55. |
| The use of sublimation printing to apply a multi-color image to the metal surface, coupled with | Column 11, line 35 through Column 11, line 50. |
| The use of printed paper as part of sublimation printing, coupled with . . . | Column 11, line 51 through Column 11, line 62. |
| The transfer of the sublimation inks onto the anodized surface through a pressing process at a temperature of 400° F for forty-five seconds, followed by . . . | Column 11, line 63 through Column 12, line 8. |
| The use of a nickel acetate seal to lock in the sublimation inks placed on the anodized surface for 3-6 minutes, followed by . . . | Column 12, line 9 through Column 12, line 13. |

| The use of de-ionized water for 3 to 10 minutes, followed by | Column 12, line 15. |
|---|---|
| Force air drying at a temperature of 220-275, with a | Column 12, line 19. |
| a coating thickness of seven to 25 microns for maximum brilliance. | Column 10, line 56 through Column 11, line 3. |

15.     Each of these elements qualify as trade secrets under federal and state law.  Further, they were disclosed to Anomatic only under an NDA.

16.     Needless to say, Anomatic's decision to publicly disclose Mareiners' trade secrets in a patent application resulted in the permanent loss of those trade secrets, creating significant financial harm to Mareiners.

17.     As one example, Mareiners has licensed its proprietary technology to various third parties, and risks losing those licenses and any future licenses if the technology is not only public but purportedly patented by Anomatic.  As described below, at least one licensee has foregone a potential business relationship with a third party for fear of infringing the '655 Patent, directly resulting in a loss of corresponding royalties to Mareiners.

**COUNT I: DEFEND TRADE SECRETS ACT CLAIM**

18.     Mareiners realleges and incorporates by reference herein each of the foregoing allegations set forth in this Complaint.

19.     The federal Defend Trade Secrets Act ("DTSA"), at 18 U.S.C. § 1839(3), recognizes as a "trade secret" confidential information that: (A) the owner thereof has taken reasonable measures to keep secret; and (B) derives independent economic value, actual or potential, from not being generally known to, and not being readily ascertainable through proper means by, another person who can obtain economic value from the disclosure or use of the information.

20.     Mareiners' highly confidential sublimation technology, as detailed above with reference to the '655 Patent, constitutes trade secrets.

21.     Mareiners' trade secrets derive independent, actual and potential economic value from not being generally known or readily ascertainable to others by lawful means.  Mareiners has put into place physical, legal and cyber security measures to protect the confidentiality of its trade secrets, including security software, access credentials/passwords, physical security (*e.g.* ID badges required to enter the building), contractual confidentiality agreements, company policies, and other measures.  Those measures are reasonable to maintain secrecy.

22.     Mareiners has invested substantial time and money in developing its trade secrets and in its efforts to protect and maintain the secrecy thereof.

23.     Anomatic misappropriated Mareiners' trade secrets by disclosing them in a public patent application and claiming them as its own technology, including obtaining a U.S. Patent on Mareiners' trade secrets.

24.     As a direct and proximate result of Anomatic's trade secret misappropriation, Mareiners has been, and continues to be, materially harmed in an amount to be proven at trial and in a manner that cannot be fully measured or compensated in economic terms alone.  Such irreparable harm will continue unless Anomatic's acts are restrained and enjoined.

**COUNT II: TRADE SECRET MISAPPROPRIATION (STATE LAW)**

25.     Mareiners realleges and incorporates by reference herein each of the foregoing allegations set forth in this Complaint.

26.     The Ohio Uniform Trade Secrets Act (the "UTSA"), at ORC § 1333.61 et seq., recognizes as a "trade secret" as confidential information that: (1) derives independent economic value, actual or potential, from not being generally known to, and not being readily ascertainable

by proper means by, other persons who can obtain economic value from its disclosure or use; and (2) is the subject of efforts that are reasonable under the circumstances to maintain its secrecy.

27.     Mareiners' highly confidential sublimation technology, as detailed above with reference to the '655 Patent, constitutes trade secrets.

28.     Mareiners' trade secrets derive independent, actual and potential economic value from not being generally known or readily ascertainable to others by proper means.  Mareiners has put into place physical, legal and cyber security measures to protect the confidentiality of its trade secrets, including security software, access credentials/passwords, physical security (*e.g.* ID badges required to enter the building), contractual confidentiality agreements, company policies, and other measures.  Those measures are reasonable to maintain secrecy.

29.     Mareiners has invested substantial time and money in developing its trade secrets and in its efforts to protect and maintain the secrecy thereof.

30.     Anomatic willfully misappropriated Mareiners' trade secrets by, without limitation, disclosing them in a public patent application and claiming them as its own technology, including obtaining a U.S. Patent on Mareiners' trade secrets.

31.     As a direct and proximate result of Anomatic's trade secret misappropriation, Mareiners has been, and continues to be, materially harmed in an amount to be proven at trial and in a manner that cannot be fully measured or compensated in economic terms alone.  Such irreparable harm will continue unless Anomatic's acts are restrained and enjoined.

### COUNT III: BREACH OF CONTRACT

32.     Mareiners realleges and incorporates by reference herein each of the foregoing allegations set forth in this Complaint.

33.     As a party to the NDA with Mareiners, Anomatic agreed, *inter alia*, that it would not disclose Mareiners' confidential information to any third party.  *See* Exhibit A at § 3(a).

34.     Anomatic breached the NDA at least by disclosing Mareiners' confidential information to the U.S. Patent & Trademark Office and, later, the general public by filing a patent application that incorporated Mareiners' confidential information.

35.     Mareiners has performed pursuant to the terms of the NDA.

36.     As a direct and proximate result of Anomatic's breach, Mareiners has been, and continues to be, materially harmed in an amount to be proven at trial and in a manner that cannot be fully measured or compensated in economic terms alone.  Such irreparable harm will continue unless Anomatic's acts are restrained and enjoined.

**COUNT IV: TORTIOUS INTERFERENCE WITH BUSINESS RELATIONSHIPS**

37.     Mareiners realleges and incorporates by reference herein each of the foregoing allegations set forth in this Complaint.

38.     Mareiners has business relationships with several licensees and prospective licensees for the use of its patent and related technology.  One example of these licensees is USA Cards Inc. ("USA Cards").

39.     Anomatic knows and has known of Mareiners' business relationships.

40.     Anomatic intentionally interfered with Mareiners' business relationships with its licensees and prospective licensees by securing the '655 Patent based on Anomatic's misappropriation of Mareiners' trade secrets and causing Mareiners' licensees to believe that they could not utilize Mareiners' licensed technology without risking infringement of the '655 Patent.  As one example, USA Cards ceased discussions with a potential major customer concerning the use of Mareiners' technology to provide services for that customer for fear of infringing the '655

Patent. Mareiners' was thus deprived of royalties that USA Cards would have paid to Mareiners for using Mareiners' licensed technology in providing services to the lost customer.

41.     Anomatic's interference was accomplished through improper means, namely, misappropriation of Mareiners' trade secrets and falsely claiming inventorship of the technology claimed in the '655 Patent.

42.     Anomatic did not have a privilege to perform this interference.

43.     As a direct and proximate result of Anomatic's interference, Mareiners has been, and continues to be, materially harmed in an amount to be proven at trial and in a manner that cannot be fully measured or compensated in economic terms alone. Such irreparable harm will continue unless Anomatic's acts are restrained and enjoined.

**COUNT V: CORRECTION OF INVENTORSHIP UNDER 35 U.S.C. § 256**

44.     Mareiners realleges and incorporates by reference herein each of the foregoing allegations set forth in this Complaint.

45.     On December 12, 2019, Anomatic filed U.S. Patent Application No. 16/712,552, naming Mark A. Ormiston as the sole inventor. The application claimed priority to U.S. Provisional Patent Application No. 62/778,987, which was filed on December 13, 2018, shortly after Anomatic acquired Mareiners' confidential information pursuant to the NDA. These applications matured into the '655 Patent, which issued on November 23, 2021.

46.     Anomatic is the current assignee of the '655 Patent.

47.     Reiner J. Goertzen, founder and president of Mareiners, made significant inventive contributions to the inventions claimed in the '655 Patent as detailed above with reference to the specification of the '655 Patent. In fact, all of the inventive concepts of the '655 Patent were contributed solely by Mr. Goertzen.

48. Because Mr. Goertzen is the sole contributor of the inventive concepts claimed in the '655 Patent, the inventorship of the '655 Patent should be corrected to remove Mr. Ormiston as an inventor and add Mr. Goertzen as the sole inventor.

49. Because Mr. Ormiston is not an inventor of the '655 Patent, any purported assignment of the '655 Patent to Anomatic was void *ab initio*, and Mr. Goertzen has the sole right to assign the '655 Patent. Mr. Goertzen has assigned all of his intellectual property rights arising out of his work in sublimation to Mareiners, rendering Mareiners the rightful assignee of the '655 Patent.

**COUNT VI: UNJUST ENRICHMENT**

50. Mareiners realleges and incorporates by reference herein each of the foregoing allegations set forth in this Complaint.

51. As described herein, Anomatic unlawfully and intentionally misappropriated Mareiners' trade secrets in violation of applicable laws for its own benefit.

52. At all times material hereto, Anomatic knew that such benefits were conferred upon it, and voluntarily accepted and retained such benefits, knowing that the trade secrets had been wrongfully misappropriated from Mareiners.

53. In view of Anomatic's misappropriation, Anomatic's retention of the benefits without payment would be unjust, at least because Anomatic's misappropriation destroyed the economic value of Mareiners' trade secrets.

54. Anomatic has been unjustly enriched by its improper and unlawful use of Mareiners' trade secrets in pursuit of economic benefits.

55. The full fair value of the benefits wrongfully obtained by Anomatic is the value they have derived from disclosing and/or using Mareiners' trade secrets, and from its ongoing use

11

of such information to design, develop, manufacture, market, sell, and/or offer to sell decorated metallic products, as well as the exploitation of the '655 Patent. Accordingly, Anomatic has been unjustly enriched in an amount to be determined at trial, and Mareiners is entitled to be paid that amount.

56.     As a direct and proximate result of Anomatic's conduct, Mareiners has been, and continues to be, materially harmed in an amount to be proven at trial and in a manner that cannot be fully measured or compensated in economic terms alone. Such irreparable harm will continue unless Anomatic's acts are restrained and enjoined.

57.     As a result of this breach, Anomatic has been unjustly enriched by obtaining the '655 Patent. A constructive trust requiring Anomatic to convey the '655 Patent to Mareiners is necessary to remedy this unjust enrichment.

## COUNT VI: CONVERSION

58.     Mareiners realleges and incorporates by reference herein each of the foregoing allegations set forth in this Complaint.

59.     Mareiners is, and at all relevant times has been, the rightful owner of the trade secrets detailed above.

60.     By incorporating the trade secrets into its patent application and disclosing them to the public, Anomatic wrongfully converted the trade secrets.

61.     Anomatic's conversion so seriously interfered with Mareiners' right to control the trade secrets that the value of the trade secrets was completely destroyed. In particular, the trade secrets derived value from not being generally known to the public and Anomatic's inclusion of the trade secrets in a patent application disclosed the trade secrets to the public, eliminating their economic value as trade secrets.

62.     Accordingly, Anomatic should be required to pay to Mareiners the full value of the trade secrets, which shall be determined at trial.

## PRAYER FOR RELIEF

WHEREFORE, Mareiners respectfully requests that the Court enter judgment as follows:

A.      Declaring that Anomatic has misappropriated Mareiners' trade secrets under the DTSA and the Ohio UTSA;

B.      Declaring that Anomatic has breached the NDA;

C.      Declaring that Mr. Goertzen is the sole inventor of U.S. Patent No. 11,182,655;

D.      Awarding damages, including punitive damages, to Mareiners for Anomatic's willful misappropriation of trade secrets and breach of contract in an amount to be proven at trial;

E.      Imposing a constructive trust requiring Anomatic to convey the '655 Patent to Mareiners;

F.      Awarding damages to Mareiners commensurate with the economic value of the trade secrets due to Anomatic's elimination of that economic value through conversion;

G.      Awarding treble damages to Mareiners because Anomatic's conduct was malicious, intentional and willful;

H.      Ordering that Anomatic pay to Mareiners the expenses of this action, including reasonable attorneys' fees, costs and interest as provided by governing law and the NDA;

I.      Ordering the return to Mareiners of all Mareiners confidential information in Anomatic's possession;

J.      Permanently enjoining Anomatic, its officers, directors, employees, affiliates, and any other entity acting on its behalf, from further disclosure of Mareiners' confidential information, from representing that Anomatic is the owner of the '655 Patent or that Mr. Ormiston

is the inventor of the '655 Patent, and from asserting any rights whatsoever in the '655 Patent, including the right to enjoin infringement or collect damages for infringement of the '655 Patent; and

K.     Granting Mareiners such other legal economic and injunctive relief as the Court deems just and proper.

## I.     DEMAND FOR JURY TRIAL

Pursuant to Rule 38 of the Federal Rules of Civil Procedure, Mareiners hereby demands a trial by jury in this action of all claims so triable.

Dated:  September 13, 2022

Respectfully submitted,

STRAUSS TROY CO., LPA

/s/ Alex S. Rodger
Alex S. Rodger (0089525)
Trial Counsel
The Federal Reserve Building
150 East Fourth Street
Cincinnati, OH  45202-4018
(513) 621-2120 – Telephone
(513) 629-9426 – Facsimile
E-mail: *asrodger@strausstroy.com*
*Attorney for Mareiners, LLC*